**WESTVIEW HEALTH CARE ASSOCIATION d/b/a Westview Nursing Center, Appellant,**

v.

**MISSOURI DEPARTMENT OF SOCIAL SERVICES, DIVISION OF MEDICAL SERVICES, Respondent.**

**No. WD 46864.**

Missouri Court of Appeals, Western District.

April 20, 1993.

Harvey M. Tettlebaum, Husch and Eppenberger, Jefferson City, for appellant.

John Pruitt Killiam, Jefferson City, for respondent.

Before LOWENSTEIN, C.J., and TURNAGE and KENNEDY, JJ.

TURNAGE, Judge.

Westview Health Care Association, d/b/a Westview Nursing Center, filed a complaint with the Administrative Hearing Commission challenging the Department of Social Services, Division of Medical Services, determination of the per diem reimbursement which it should receive from the medicaid program. The Commission found against Westview and on appeal to the circuit court the Commission's decision was affirmed. Westview contends that the Commission's decision was erroneous because it gave effect to a department rule which is contrary to law.[1] Affirmed.

Westview operates a nursing home in Herculaneum. The facility is licensed and certified to provide skilled and intermediate long-term residential care. It has a valid Title XIX Provider Agreement with the Department by which it is certified to participate in the medicaid program.

Effective July 1, 1990 the Department set Westview's per diem reimbursement at $52.62. When the case reached the AHC the parties agreed that the Department had overlooked certain costs and the per diem rate should be $53.09. The contested issue before the AHC was the amount of Westview's capital costs. After a hearing the AHC gave effect to the department rule fixing capital costs and fixed $53.09 as the proper per diem amount.

Before the AHC, Westview contended that the Department's rule promulgated to be effective July 1, 1990 and codified as 13 C.S.R. 70–10.010 fixing the capital costs of nursing homes was invalid because it was contrary to law. That is the question presented by this appeal.

Westview begins its argument by pointing to § 208.169.1(3), RSMo 1987 Supp. which sets out a formula for calculating the capital expense incurred by nursing homes. That section provides that the building and building equipment rate will be the lower of actual acquisition costs or the reasonable construction or acquisition cost computed by applying the Dodge Construction Index or another current construction cost measure. The statute provides for certain calculations to be made based on the Dodge Construction Index to determine the allowable capital expense. Section 208.169.2 provides that § 208.169.-1(3) shall remain in effect until July 1, 1989 unless otherwise provided by law. No other provision has retained that provision and it expired on July 1, 1989.

Effective July 1, 1990 the department promulgated 13 C.S.R. 70–10–(7)(Q)2A(I) which states that the building and building equipment rate for nursing homes will be computed by determining the lower of the actual acquisition cost or the reasonable construction or acquisition costs computed by applying the building cost calculator as defined in the rule. The parties agree that

---

[1] This court reviews the decision of the AHC and not that of the circuit court. *Sells Rest Home, Inc. v. Dept. of Social Serv.,* 829 S.W.2d 59, 61 (Mo.App.1992).

the building cost calculator is the equivalent of the Dodge Construction Index. The Dodge Construction Index and building cost calculator are designed to yield the reasonable cost of constructing buildings within the various geographic areas of the state.

Westview contends that the legislature prohibited the Department from utilizing the Dodge Construction Index or its equivalent when it provided that § 208.169.1(3) would remain in effect only until July 1, 1989. Westview contends that because the legislature did not authorize the use of the Dodge Construction Index after July 1, 1989 that the Department was prohibited from adopting a rule which would use a construction cost index. Westview relies upon the well-established rule that regulations may be promulgated only within the delegated authority of the statutes involved. *Parmley v. Missouri Dental Bd.,* 719 S.W.2d 745, 755[5] (Mo. banc 1986). The logical conclusion of Westview's argument, though unstated, is that after July 1, 1989 the Department would have to accept construction or acquisition costs as the capital cost of a nursing home even if such costs were unreasonable or ill-advised.

The Department contends that by inserting the sunset clause in § 208.169.2 which caused § 208.169.1(3) to expire on July 1, 1989 the legislature was not prohibiting the use of a construction cost index but simply discontinued the mandate that a construction cost index be utilized.

Section 208.201.5(2), RSMo 1987 Supp. provides that the Division of Medical Services within the Department of Social Services shall have the power "To adopt, amend and rescind such rules and regulations necessary or desirable to perform its duties under state law and not inconsistent with the constitution or laws of this state." Section 208.159, RSMo 1986 gives the department of social services the responsibility to administer payments for nursing home services authorized in § 208.151, et seq. That section further provides that "The department shall, pursuant to chapter 536, RSMo, promulgate rules and regula-

tions for the purpose of administering such payments, including rules to define the reasonable costs ... for nursing home services." The Department contends that under § 208.159 and § 208.201 it has the power to promulgate rules defining the capital costs which will be used to calculate the per diem reimbursement for nursing homes.

There can be no question but that the Department has the power to establish reasonable costs as a basis for setting the per diem reimbursement. Further, it is apparent from §§ 208.159 and 208.201 that the power to promulgate rules and regulations to establish reasonable costs includes the power to promulgate 13 C.S.R. 70–10–(7)(Q)2A(I) which provides a method for establishing a reasonable capital cost for nursing homes. The sunset provision in § 208.169.2 simply means that the legislature did not mandate the use of the Dodge Construction Index after July 1, 1989. However, the insertion of the sunset clause did not withdraw any authority granted to the Department under §§ 208.169 and 208.-201 to promulgate rules and regulations to define reasonable costs incurred by nursing homes.

It was as necessary to establish a reasonable capital cost for nursing homes after July 1, 1989 as it was prior to that time when the legislature required that such costs be calculated by using the Dodge Construction Index. When § 208.169.1(3) ceased to exist, the legislature knew that it had given to the Department the power to adopt rules and regulations by which the Department could define reasonable costs which would be taken into account in establishing a per diem reimbursement rate. For that reason the legislature could safely let § 208.169.1(3) expire on July 1, 1989 because the Department could adopt rules and regulations for the purpose of establishing reasonable costs, including capital costs, after that date.

In this case, the Department found that Westview's actual capital cost per patient day was $15.02 but the same capital cost calculated under the building cost calcula-

tor yielded $8.26.[2] The Department adopted the $8.26 figure in fixing Westview's per diem reimbursement rate.

The Commission correctly decided that the Department had the power to promulgate 13 C.S.R. 70–10–(7)(Q)2A(I) by which Westview's capital cost would be ascertained. The judgment affirming the decision of the AHC is affirmed.

All concur.

---

**2.** The difference between the actual capital cost and the cost derived by applying the building cost calculator is $6.76. Westview admits that it cannot receive the entire $6.76 because the Department has a maximum per diem reimburse-ment of $55.92. Therefore, Westview is claiming an additional per diem of $2.81 in capital cost which would take it up to the maximum per diem.